1
2
3

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

4

MYRA A.,

Case No. 2:23-cv-0196-BNW

5

Plaintiff,

6

v.

**ORDER**

7

MARTIN O'MALLEY, Commissioner of
Social Security\*,

8

Defendant.

9
10

11          Presently before the Court is Plaintiff's Motion for Reversal and Remand. (ECF No. 18).

12   Defendant filed a response in opposition (ECF No. 23) and a Countermotion to Affirm the

13   Agency Decision (ECF No. 22). Plaintiff then filed a Reply in support of her motion (ECF No.

14   24). For the reasons stated below, the Court remands the Commissioner's final decision.

15   **I.      Background**

16          On August 1, 2019, Plaintiff applied for disability insurance benefits under Title II of the

17   Social Security Act, alleging an onset date of August 1, 2019. ECF No. 14-1[1] at 202-210.

18   Plaintiff's claim was denied initially and on reconsideration. *Id*. at 124 and 134. A telephonic

19   hearing was held before Administrative Law Judge ("ALJ") Cynthia R. Hoover on February 15,

20   2022. *Id*. at 53-77. On March 9, 2022, ALJ Hoover issued a decision finding that Plaintiff was not

21   disabled. *Id*. at 25-38.  On December 16, 2022, the Appeals Council denied review. *Id*. at 5-10.

22   On February 21, 2023, Plaintiff commenced this action for judicial review under 42 U.S.C. §

23   405(g). *See* Compl. (ECF No. 6).

24   ///

25

26   \* Martin O'Malley has been substituted for his predecessor in office, Kilolo Kijazaki, pursuant to Federal Rule of
Civil Procedure 25(d).

27   [1] ECF No. 14-1 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed.
(Notice of Electronic Filing (ECF No. 14-1)). All citations to the Administrative Record will use the CM/ECF page
28   numbers.

1   **II.     Discussion**

2         **A.     Standard of Review**

3         Administrative decisions in Social Security disability benefits cases are reviewed under 42

4   U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g)

5   provides that "[a]ny individual, after any final decision of the Commissioner of Social Security

6   made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may

7   obtain a review of such decision by a civil action . . . brought in the district court of the United

8   States for the judicial district in which the plaintiff resides." The court may enter "upon the

9   pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the

10  decision of the Commissioner of Social Security, with or without remanding the cause for a

11  rehearing." 42 U.S.C. § 405(g).

12        The Commissioner's findings of fact are conclusive if supported by substantial evidence.

13  *See id.*; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's

14  findings may be set aside if they are based on legal error or not supported by substantial evidence.

15  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

16  278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a

17  mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind

18  might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

19  Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining

20  whether the Commissioner's findings are supported by substantial evidence, the court "must

21  review the administrative record as a whole, weighing both the evidence that supports and the

22  evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715,

23  720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

24        Under the substantial evidence test, findings must be upheld if supported by inferences

25  reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

26  When the evidence supports more than one rational interpretation, the court must defer to the

27  Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten*

28  *v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue

1   before the court is not whether the Commissioner could reasonably have reached a different

2   conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on

3   the ALJ to make specific findings so that the court does not speculate as to the basis of the

4   findings when determining if the Commissioner's decision is supported by substantial evidence.

5   Mere cursory findings of fact without explicit statements as to what portions of the evidence were

6   accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981).

7   The ALJ's findings "should be as comprehensive and analytical as feasible, and where

8   appropriate, should include a statement of subordinate factual foundations on which the ultimate

9   factual conclusions are based." *Id.*

10          **B.     Disability Evaluation Process and the ALJ Decision**

11          The individual seeking disability benefits has the initial burden of proving disability.

12   *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must

13   demonstrate the "inability to engage in any substantial gainful activity by reason of any medically

14   determinable physical or mental impairment which can be expected . . . to last for a continuous

15   period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Moreover, the individual must

16   provide "specific medical evidence" in support of her claim for disability. 20 C.F.R.

17   § 404.1514. If the individual establishes an inability to perform her prior work, then the burden

18   shifts to the Commissioner to show that the individual can perform other substantial gainful work

19   that exists in the national economy. *Reddick*, 157 F.3d at 721.

20          The ALJ follows a five-step sequential evaluation process in determining whether an

21   individual is disabled. *See* 20 C.F.R. § 404.1520(a); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

22   If at any step the ALJ determines that she can make a finding of disability or non-disability, a

23   determination will be made, and no further evaluation is required. *See* 20 C.F.R.

24   § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

25          Step one requires the ALJ to determine whether the individual is engaged in substantial

26   gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the individual is engaged in SGA, then

27   a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis

28   proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(a)(4)(ii). If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(a)(4)(iii). If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement, then a finding of disabled is made. *Id.* § 404.1520(d). Otherwise, the analysis proceeds to step four.

However, before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1560; *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1545. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(a)(4)(iv). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed an SGA. If the individual has the RFC to perform her

1   past work, then a finding of not disabled is made. If the individual is unable to perform any PRW

2   or does not have any PRW, then the analysis proceeds to step five.

3          The fifth and final step requires the ALJ to determine whether the individual can do any

4   other work considering her RFC, age, education, and work experience. 20 C.F.R.

5   § 404.1520(a)(4)(v). If she can do other work, then a finding of not disabled is made. Although

6   the individual generally continues to have the burden of proving disability at this step, a limited

7   burden of going forward with the evidence shifts to the Commissioner. The Commissioner is

8   responsible for providing evidence demonstrating that other work exists in significant numbers in

9   the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

10          Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R.

11   § 404.1520(a). ECF No. 14-1 at 25-38.

12           At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity

13   since August 1, 2019, the alleged onset date. *Id*. at 27.

14          At step two, the ALJ concluded that Plaintiff had the following severe impairments: spine

15   disorders. *Id*. at 27-30.

16          At step three, the ALJ found that Plaintiff did not have an impairment or combination of

17   impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P,

18   Appendix 1(20 CFR 404.1520(d), 404.1525 and 404.1526). *Id*. at 30.

19          The ALJ then found that Plaintiff has the RFC to perform sedentary work as defined in 20

20   CFR 404.1567(a) except she can lift 10 pounds occasionally and 10 pounds frequently; can stand

21   and walk for 6 hours or sit for 6 hours; can occasionally push and pull with the bilateral upper

22   extremities; can never climb ladders, ropes, or scaffolds; can occasionally climb ramps or stairs;

23   can occasionally stoop, kneel, crouch, or crawl; can reach on a frequent basis; needs to avoid

24   vibration and hazards such as unprotected heights and dangerous moving machinery like

25   chainsaws and jackhammers.  *Id*. at 30-36.

26          At step four, the ALJ determined that Plaintiff could perform past relevant work as a

27   reservation clerk and telephone solicitor. *Id*. at 36.

28

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and found the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. *Id*. at 38-39. Specifically, the ALJ found that Plaintiff can work as bill sorter, addresser, and call out operator. *Id*. at 38. The ALJ then concluded that Plaintiff was not under a disability at any time since November 30, 2016. *Id*. at 38.

**III. Analysis**

    **A. Whether the ALJ failed to properly evaluate the persuasiveness of the opinion proffered by Elum Malik, PA-C.**

When evaluating medical opinions, the ALJ is required to articulate findings regarding only supportability and consistency with the evidence. 20 C.F.R. § 416.920c(b)(2) (identifying two most important factors, supportability, and consistency), (c) (enumerating all factors); *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id.* (citing § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id.* (quoting § 404.1520c(c)(2)). The higher the degree of supportability and consistency a medical opinion has, the more persuasive it is. *See* 20 C.F.R. § 404.1520c(c)(1) and (2).

    **1. Elum Malik, PA-C Opinion**

Here, the ALJ considered the opinion of certified physician assistant, Elum Malik, who completed a functional assessment of Plaintiff's physical abilities on May 18, 2020. ECF 14-1 at 349. The ALJ found the opinion not persuasive:

> Erum Malik, PA-C, opined the claimant could lift and carry less than 10 pounds occasionally and frequently; stand and/or walk less than 2 hours a day; sit less than 6 hours per day; was limited in pushing and pulling in the upper and lower extremities; could never climb ladders, ropes, or scaffolds, stoop, kneel, or crouch; could occasionally climb ramps and stairs, balance, and crawl; needed to avoid even moderate exposure to extreme cold and hazards; needed to avoid concentrated exposure to extreme heat; and was limited in reaching, handling, fingering, and feeling (Exhibits 3F at 2-11; 4F). This opinion is not persuasive.

*Id.* at 34. The ALJ found this opinion was unpersuasive because "Malik supported his opinion with narrative statements indicating the claimant had widespread pain worsened with physical activity; pain was in the shoulders, wrists, and feet; had joint weakness and stiffness; had decreased range of motion of multiple joints; symptoms lasted 8 years; and imaging correlated to her symptoms" noted by Malik were "not supported by his own treatment notes" *Id.*

Importantly, the ALJ also found Malik's "restrictions in manipulation are not consistent with exams that did not show swelling of the hands or limitations in range of motion of the wrists or fingers (Exhibits 7F at 6- 7; 9F at 3; 13F at 19)." *Id.* Restrictions in fingering and manipulation are crucial to the determination of whether Plaintiff is totally disabled or capable of performing past relevant work or other jobs that exist in significant numbers in the national economy. *See Id.* at 37-38. At the hearing, the vocational expert testified if Plaintiff was limited to occasional use of her "upper right extremity for handling and fingering" all past relevant work and other jobs in the national economy would be eliminated as a source of employment for Plaintiff. *Id.* at 76.

Plaintiff argues that the ALJ failed to adequately articulate how she considered the consistency factor of Malik's opinion. *See* ECF No. 18, Plaintiff's Motion for Reversal, at 10-13. Plaintiff asserts that the ALJ failed to account for the consistency of two medical opinions: (1) the February 25, 2022, neurological consultation performed by Eric Gutgineck, M.D. (at ECF No. 14-1 at 44-48).; and (2) the January 2022 physical therapy records of an initial evaluation and follow-up by DPT Sarah Kisch (*Id.* at 505-507).[2] The Court agrees that the failure to consider these records in describing the consistency and supportability of Malik's opinion results in a legal error that must be resolved in remand to the ALJ for their consideration.

**a. Dr. Gutgineck's Neurolgical Consultation**

The neurological consultation occurred ten days after the February 15, 2022 hearing, but before the ALJ issued his final decision. *Id.* at 25, 44. The records were first presented to the Appeals Council ("AC"), who determined "[w]e find this evidence does not show a reasonable

---

[2] Plaintiff cited a third report of an MRI of Plaintiff's cervical spine in December 2021. ECF No. 18 at 12. However, that report was considered by the ALJ. ECF No. 14-1 at 32.

Case 2:23-cv-00196-BNW   Document 25   Filed 03/15/24   Page 8 of 11

probability that it would change the outcome of the decision." *Id.* at 6. The AC denied Plaintiff's

request for review. *Id.* at 5. When the Appeals Council "considers" evidence that an ALJ did not

originally review in "deciding whether to review a decision of the ALJ, that evidence becomes

part of the administrative record, which the district court must consider when reviewing the

Commissioner's final decision for substantial evidence." *Brewes v. Comm'r of Soc. Sec. Admin.*,

682 F.3d 1157, 1163 (9th Cir. 2012) (citing *Harman v. Apfel,* 211 F.3d 1172, 1180 (9th Cir.

2000) ("We properly may consider the additional materials because the Appeals Council

addressed them in the context of denying Appellant's request for review.")).

      The additional evidence Plaintiff submitted to the Appeals Council was directly

responsive to the RFC, the vocational expert's testimony and to the ALJ's failure to address

limitations imposed by rheumatoid arthritis.[3] Gutgineck's report shows: cervical spinal canal

stenosis worst at the C4-5 and C5-6 levels with moderate to severe with multilevel

neuroforaminal narrowing and severe narrowing of the left lateral recesses from C4-5 through

C4-6 levels and hyperreflexion in the left upper extremity, numbness, pain and paresthesias in the

bilateral upper and lower extremities. ECF No. 14-1 at 47. Further, objective testing revealed

positive Tinel's test at the bilateral wrists, and reduced sensation to pinprick of the hands. *Id.* at

47. Each of these diagnoses and symptoms supports and is consistent with Malik's opinion.

Further, they suggest more limitations may be appropriate in the ALJ's RFC, particularly, those

that involve reaching and manipulation which would have a direct impact on the vocational

expert's testimony. Finally, the neurological report strengthens the need for the ALJ to address

any limitations imposed by rheumatoid arthritis, which would directly impact the testimony of the

vocational expert.

      **b. The January 2022 Physical Therapy Records of DPT Sarah Kisch**

      Unlike the records from the neurogical consultation, the ALJ had the physical therapy

("PT") records and expressly admitted them into evidence at 13F. *Id.* at 58, 492-515. The value of

---

[3] "The ALJ is required to consider all of the limitations imposed by the claimant's impairments, even those
that are not severe." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Social
Security Ruling ("SSR") 96–8p (1996)).

Page 8 of 11

the PT records is not in Plaintiff's self-report of symptoms but in the evaluations and testing conducted by Dr. Kisch. A functional status examination revealed moderate limitation in pushing and pulling activity and lifting from the floor. *Id.* at 505. Plaintiff was assessed as severely limited in lifting overhead and right-handed tasks lifting overhead. *Id.* Plaintiff's examination also revealed limited range of motion of the cervical spine and positive special tests, including the upper limb tension test. *Id.* at 506. Plaintiff was noted to have decreased dermatomes, nerves which send two-way singles to the brain and back. *Id.* The examination also revealed significant hypertrophy, adhesions, and tenderness to palpation. *Id.*

These records, like Dr. Gutgineck's, provide further support for the lifting, fingering and manipulation limitations assessed by Malik. The ALJ failed to account for Dr. Kisch's report at all, other than to say she considered "all the evidence, including medical records not cited herein." *Id.* at 36. However, cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin*, 654 F.2d at 634. The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.* Here, a probative report was dealt with in cursory manner without considering its supportability and consistency.

**(c) The ALJ committed legal error by failing to consider these reports**

In assessing whether a claimant is disabled, the ALJ must "develop the record and interpret the medical evidence." *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (citing *Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996)). The ALJ is not obligated to discuss "every piece of evidence" where the evidence is "neither significant nor probative." *Id.* However, Dr. Gutgineck's neurological consultation and Dr. Kisch's functional status examination and other testing are both significant and probative. They undermine the ALJ's finding Malik's opinion unpersuasive. They are significant evidence that Plaintiff's ability to manipulate and reach is extremely limited.

As noted above, the ALJ has a duty to "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical

findings in [her] determination or decision." 20 C.F.R. § 404.1520c(b)(2). The ALJ's consistency and supportability findings must be supported by substantial evidence. *See Woods*, 32 F.4th at 792. In rejecting Malik's opinion regarding Plaintiff's limitations, the ALJ failed to address significant evidence that was consistent with Malik's opinion. This was legal error. *See id.* (an ALJ cannot reject a doctor's opinion "as unsupported or inconsistent without providing an explanation supported by substantial evidence. The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how [it] considered the supportability and consistency factors in reaching these findings.") (internal quotations and citations omitted).

Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. *See Taylor v. Comm'r of Soc. Sec. Admin*, 659 F.3d 1228, 1233 (9th Cir. 2011). As a result, remand to the ALJ for further consideration is in order, because Dr. Gutgineck's and Dr. Kisch's medical source statements were not appropriately considered by the ALJ. On remand, the ALJ should consider those records and weigh the consistency and supportability of Malik's report in consideration of those reports and the other medical evidence in the administrative record. Further, she should consider whether those reports alter Plaintiff's RFC and whether any change in limitations alters the vocational expert's opinion about past relevant work or other jobs in the national economy.

**IV.    Conclusion**

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Reversal and Remand (ECF No. 18) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendant's Countermotion to Affirm the Agency Decision (ECF No. 22) is **DENIED**.

///

///

///

1      **IT IS FURTHER ORDERED** that the Clerk of the Court enter judgement

2  **REVERSING** the decision of the Commissioner and **REMANDING** this matter for further

3  administrative proceedings pursuant to 42 U.S.C. § 405(g).

4  DATED: March 15, 2024.

5  _____

6  BRENDA WEKSLER
  UNITED STATES MAGISTRATE JUDGE